**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. WDQ-08-0444** |
| | * | |
| v. | * | |
| | * | |
| **DAVID BRAXTON** | * | |
| | * | |
| | * | |
| | * | |

....oOo....

**GOVERNMENT'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PRE-TRIAL MOTIONS**

The United States of America, by its undersigned counsel, submits its Omnibus Memorandum of Law in opposition to the Motion to Dismiss on Speedy Trial Grounds, Motion to Enforce the Plea Offer, and Motion to Transfer Case to Judge Motz filed by the Defendant, David Braxton. For the reasons discussed below, the Motions should be denied.

**FACTUAL BACKGROUND**

At approximately 4:30 p.m. on May 17, 2006, Officer Richard Allen of the Baltimore City Police Department was on routine patrol when he observed a maroon in color Cadlillac Eldorado with heavily tinted windows traveling southbound. Officer Allen began to follow the vehicle and checked the tag numbers to see if the vehicle was stolen. His investigation revealed that the tags attached to the Cadillac Eldorado belonged to a 1989 Ford Crown Victoria. At that point, Officer Allen called for back-up and conducted a traffic stop in the 500 block of Martin Luther King Blvd.

Officer Allen approached the car and began to interview the driver of the vehicle, specifically requesting his driver license and registration. When the driver could not produce a valid registration, Officer Allen asked the driver, and the individual seated in the rear driver side seat, to

exit the vehicle while another officer, Officer Kenneth Williams, similarly instructed the defendant, who was seated on the passenger side of the vehicle, to exit. Prior to the defendant's exit, Officer Williams noted that the defendant continued to stare straight ahead, pretending to be oblivious to everything transpiring around him, despite the fact that the other passengers and the officers were all speaking. Given his concerns about the defendant's odd behavior, the fact that it was a high-crime area and that the defendant was riding in a car with license tags belonging to another vehicle, Officer Williams began a pat-down of the defendant for weapons. During the pat-down, Officer Williams felt the handle of a gun in the defendant's waistband. The defendant then tried to push Officer Williams and escape. With the assistance of additional officers, Officer Williams placed the defendant under arrest and recovered from the defendant's waist a Ruger 9mm handgun with several rounds of ammunition. The driver of the vehicle was issued a citation for not producing a valid registration on demand and for driving an unregistered vehicle and the two other passengers were issued citations for possession of an open container of alcohol.

## PROCEDURAL BACKGROUND

On March 15, 2007, the grand jury in the District of Maryland returned an indictment charging the defendant with being a felon in possession of a firearm. The defendant's initial appearance in federal court was held on September 24, 2007[1] and the defendant filed a motion to suppress evidence approximately one month after the initial appearance. After lengthy plea discussions bore no fruit, a trial date was set in August of 2008. Because one of the government's essential witnesses, Officer Richard Allen, was in Iraq, the government requested a continuance of

---

[1] Undersigned counsel was not employed by this office at that time and the AUSA who indicted the case, Steven Levin, is no longer with the office. As a result, the government is not in a position to advise the Court of the reason for the delay. As the Court is aware, however, the speedy trial clock does not begin until the defendant makes his first appearance in federal court.

one month in order to secure the officer's presence. The government filed the required paperwork with the Department of Defense requesting Officer Allen's presence in Court but its request was denied, in part because Officer Allen was due to return shortly. In the interim, the government informed the defendant's former defense counsel, Michael Citarimanis, that in light of the difficulty the government was having in securing its witness, the government would permit the defendant to return to state court and enter a guilty plea there. Mr. Citarimanis expressed to government counsel that he thought it was a favorable outcome but later informed the government that his client had refused the offer.

After DOD refused the government's request, the government requested an additional continuance during a teleconference with the Court and counsel but its request was denied. The government informed both the Court, at that time Judge Motz, and counsel for the defendant, that it intended to dismiss the indictment without prejudice and would file a new indictment. The Court agreed that the dismissal would be without prejudice.

On September 17, 2008, a grand jury in the District of Maryland returned a new indictment charging the defendant with being a felon in possession of a firearm. This time the case was assigned to Judge Quarles. As is the norm, the government had no influence over the assignment of the case. The defendant had his initial appearance on the new charge on September 24, 2008 and a new trial date of December 1, 2008 was set. Prior to trial, Mr. Citarimanis approached the government and inquired whether the government's earlier plea offer was still available to the defendant. Given that Officer Allen had returned from Iraq, the government informed counsel that it was not.

On December 1, 2008, the parties appeared for trial and began the motions hearing. During the motions hearing, Mr. Citarimanis announced that a conflict had arisen and he would be

withdrawing as counsel. The Court granted the Motion to Withdraw and Mr. Proctor was appointed counsel.

## ARGUMENT

### This Case Has Not Violated Defendant's Speedy Trial Rights

Under the Speedy Trial Act, specifically Title 18, United States Code, Section 3161(c)(1), a criminal defendant must be brought to trial within seventy days of the later of either the filing of an indictment or the first appearance before a judicial officer of the court in which the charge is pending.

Periods of delay which would extend the time within which trial should commence include delay resulting from a defendant being joined for trial with a co-defendant as to whom the time for trial has not run, pretrial motions and anticipated pretrial suppression motions. 18 U.S.C. § 3161(h)(3)(B)(7) and (h)(1)(F). A period granted by this Court in which to file pre-trial motions is excludable delay under the general provision of Section 3161(h)(1)(F). Although that section enumerates specific excludable proceedings, the list is not exhaustive, and has been interpreted to include a number of different proceedings and events concerning a defendant. Circuit courts have ruled that these excludable "proceedings" include time specifically granted for the research, preparation, and filing of pre-trial motions.[2] Underlying these decisions is the notion that the time

---

[2] See United States v. Hoslett, 998 F.2d 648, 654-57 (9th Cir. 1993); United States v. Lewis, 980 F.2d 555, 564 (9th Cir. 1992); United States v. Benson, 941 F.2d 598, 606 (7th Cir. 1991); United States v. Barnes, 909 F.2d 1059, 1064 (7th Cir. 1990); United States v. Asubonteng, 895 F.2d 424, 427 (7th Cir. 1990); United States v. Mobile Materials, 871 F.2d 902, 913-14 (10th Cir. 1989)(per curiam), opinion supplemented on rehearing, 881 F.2d 866 (10th Cir. 1989); United States v. Piontek, 861 F.2d 152 (7th Cir. 1988); United States v. Montoya, 827 F.2d 143, 153 (7th Cir. 1987); United States v. Wilson, 835 F.2d 1440, 1444-45 (D.C. Cir. 1987); United States v. Thomas, 788 F.2d 1250, 1256 (7th Cir.), cert. denied, 479 U.S. 853 (1986); United States v. Latham, 754 F.2d 747, 752 n.4 (7th Cir. 1985); United States v. Tibboel, 753 F.2d 608, 610 (7th Cir. 1985); United States v. Jodoin, 672 F.2d 232 (1st Cir. 1982).

specifically allotted for the research and preparation of pre-trial motions is a "procedure...which a defendant might legitimately seek to take advantage for the purpose of pursuing his defense." United States v. Jodoin, 672 F.2d 232, 238 (1st Cir. 1982). Additional time through the hearing and/or prompt disposition of such motions shall also be excluded pursuant to § 3161(h)(1)(F).

In this case, the defendant filed a motion to suppress soon after the initial appearance in the first indictment before Judge Motz. That motion remained pending at the time the case was dismissed and was renewed shortly after the filing of the second indictment. Were it not for the defendant's decision to terminate Mr. Citaramanis, the motion hearing and trial would have taken place on December 1, 2008. As a result of the defendant's action, the motion remains pending and continues to toll the Speedy Trial Act. As a result, there has been no violation of the Speedy Trial Act in this case.

## The Defendant Cannot Force the Government to Re-extend Plea Offer

The defendant argues that he received ineffective assistance of counsel when he was advised by his former counsel to reject the government's earlier plea offer. He further contends that the remedy for the ineffective assistance of counsel is that the Court should enforce the plea agreement initially offered to the defendant.

The Supreme Court has held that a defendant may claim ineffective assistance of counsel arising out of the plea bargaining process. Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 3566, 88 (1985). The prejudice inquiry in such cases "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process" Id. at 59. To establish that he was prejudiced by the ineffective assistance, "the movant must present some credible, non-conclusory evidence that he would have pled guilty had he been properly advised." Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995).

The defendant provides nothing more than a conclusory statement that he was not "effectively" advised regarding the weight of the evidence and the likely sentence following a conviction in Federal Court. Defendant's specific complaints regarding a lack of diligence by former defense counsel are simply unsupported by the facts. Specifically, defendant claims that prior defense counsel should have sought out the radio traffic tape in a more expeditious fashion to reveal the flaw in his defense[3] and advise the defendant to accept the plea offer. However, as was noted at the December 1, 2008 motions hearing, both counsel had in fact sought out the tape and had been told that it did not exist. It was only due to former defense counsel's diligence that it was discovered that a master copy of the tape did still exist.

Finally, defendant can cite to no caselaw where similar relief has been sought, or considered, in a related circumstance. See e.g., Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543 (1984) (Court refuses to enforce plea offer that was withdrawn by prosecutor); Santobello v. New York, 404 U.S. 25, 92 S.Ct. 495 (1971) (Court discussing remedy for prosecutor's failure to keep commitment concerning sentencing recommendation in plea agreement); United States v. Blaylock, 20 F.3d 1458 (9th Cir. 1994) (Court remands case for factual findings where defendant was not made aware of government's plea offer); Wanatee v. Ault; 259 F.3d 700 (8th Cir. 2001) (Relief granted when defendant was incorrectly advised by lawyer as to the state of the law);

**The Defendant's Motion to Transfer is Without Case or Factual Support**

In brief, the defendant provides no relevant legal authority or any factual basis to support his Motion to Transfer to Judge Motz. Nor does the defendant assert any prejudice he has suffered from the case being assigned to Judge Quarles. The only issue he raises is that because this case was

---

[3] The defendant's theory at trial appeared to be based on a dispatcher's report of the officer radio transmission which was at odds with the police paperwork. A review of the actual transmission, however, revealed that the dispatcher's report was inaccurate.

assigned to Judge Quarles, who may not have been as familiar with the procedural history of the case as Judge Motz, "he has languished incarcerated for a further 5 months." The facts do not bear this out. The defendant had an initial appearance on the second indictment on September 24, 2008 and motions hearing and jury selection took place on December 1, 2008. There is no reason provided to believe that Judge Motz would have provided an earlier date and the only reason the case did not proceed to trial on that date is that the defendant and his counsel suffered a conflict.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motions.

                                  Respectfully Submitted,

                                  Rod J. Rosenstein
                                  United States Attorney

                                  By: _____/s/_____
                                  George J. Hazel

                                  Assistant United States Attorney

                                  36 South Charles Street
                                  4th Floor
                                  Baltimore, Maryland 21201